

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable George H. Sheppard
Comptroller of Public Accounts
Austin, Texas

*Travis Co*

Dear Sir:

Opinion No. 0-2651
Re: Is the entire amount re-
ceived by a devisee under a
will subject to the payment
of the Texas Inheritance Tax
even though prior to the pro-
bating of the will he pays
part of the estate to other
heirs in consideration of
their not contesting the will?

We are in receipt of your letter of October 24, 1940, in which you request an opinion of this department construing the Texas Inheritance Tax Law. As we under-stand the facts submitted, the testator died leaving under his will one of his heirs as sole beneficiary. Subsequent to the death of the deceased his will was attacked on the grounds of lack of testamentary capacity and undue influence. The Probate Court entered a judgment ordering that the will be probated and from this judgment the contest-ing heirs appealed to the district court at which trial the jury failed to agree. Prior to further proceedings the beneficiary named in the will reached a compromise agree-ment with the other heirs whereby he agreed to pay them a sum of $22,500.00. After the agreement was reached the appeal of the contestants was dismissed and the will was left standing as probated. The question with which you are now presented is whether or not the beneficiary named in the will is subject to the payment of the Texas Inheritance Tax upon the entire amount devised to him under the will or is he subject to the payment to such tax only upon the value of the estate left to him in the will less the $22,500.00 which he paid to the other heirs under the com-promise agreement.

Article 7117, of Vernon's Annotated Civil Stat-utes, reads in part as follows:

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Honorable George H. Sheppard, Page 2

> "All property within the jurisdiction of
> this State, real or personal, corporate or in-
> corporate, and any interest therein, including
> property passing under a general power of appoint-
> ment exercised by the decedent by will, includ-
> ing the proceeds of life insurance to the ex-
> tent of the amount receivable by the executor
> or administrator as insurance under policies
> taken out by the decedent upon his own life, and
> to the extent of the excess over Forty Thousand
> Dollars ($40,000) of the amount receivable by
> all other beneficiaries as insurance under pol-
> icies taken out by the decedent upon his own
> life, whether belonging to inhabitants of this
> State or to persons who are not inhabitants, re-
> gardless of whether such property is located
> within or without this State, which shall pass
> absolutely or in trust by will or by the laws
> of descent or distribution of this or any other
> State, or by deed, grant, sale, or gift made
> or intended to take effect in possession or en-
> joyment after the death of the grantor or donor,
> shall, upon passing to or for the use of any
> person, corporation, or association, be subject
> to a tax for the benefit of the State's General
> Revenue Fund, in accordance with the following
> classification. . . ."

We are unable to find any case authority in Texas on the proposition you present. However, a similar question has presented itself on numerous occasions in the courts of other states of the United States and the courts are in con-flict as to the correct result to be reached in such a situa-tion. Evidently a majority of the jurisdictions hold the entire amount received by the devisee under the will as sub-ject to the inheritance tax despite the fact that the amount actually taken by him is diminished because of a compromise agreement he entered into with other claimants in considera-tion of their forbearance from contesting the will.

The Supreme Judicial Court of Massachusetts was presented with a like fact situation in the case of Brown v. McLoughlin, 190 N. F. 795. The court held the entire amount received by the devisee as taxable despite the com-promise agreement and stated as follows:

> "Even when a compromise of a contest over
> the admission of a will to probate has been au-
> thorized by a court under the statute (G. L.

(Ver. Ed.) c. 204, § § 15-18), upon the probate of the will the title devolves by force of the will, and then is transferred according to the agreement of compromise. Ellis v. Hunt, 228 Mass. 39, 116 N. E. 956, Copeland v. Wheelwright, 230 Mass. 131, 119 N. E. 667. The tax was properly levied upon the gift by will of the whole residue to Gaffney, and at a rate adapted to his relationship or want of relationship to the testatrix. . . ."

The Court of Appeals of New York reached a similar result in the case of In re Cook's Estate, 79 N. Y. 991. The court stated as follows:

"The compromise did not change the will. No settlement could change a word that the testator wrote. The will stands as it was written, and the most solemn instrument, executed by all parties interested, could not convert a bequest to the nephews and nieces into a bequest to the widow. As we said in another case, she takes under them 'by contract, not under the will or from the testator.' Greenwood v. Holbrook, 111 N. Y. 465, 471, 18 N. E. 711. A succession tax is measured by the legal relation which the legatee bears to the testator and is not affected by the relation which an assignee of the legatee bears to him. Here the legatees took the residuum under the will. They succeeded the testator in the ownership thereof and their succession gives rise to the tax. The widow did not take the residue from the testator, for he did not give it to her. She took as assignee, not as legatee. Unless she took as assignee, she did not take at all. The legatees assigned to her and the rate of taxation is fixed by their relation to the testator. As she did not take through the will, the succession tax cannot be fixed at the rate of 1 per cent, as in the case of a bequest to a widow, but must be fixed at the rate of 5 per cent, as in the case of a bequest to nephews and nieces."

Perhaps the best discussion concerning the reason behind the rule discussed in these cases was given by the Supreme Court of Illinois in the case of In re Graves' Estate,

89 N. Y. 976. The court construed a fact situation very similar to the one under consideration in this opinion, and stated as follows:

> "The inheritance tax law (Purd's Rev. St. 1908, c. 120, § § 366-388) provides that all property so descending, whether under the statute of wills or the statute of descent, shall be subject to a tax at certain specified rates at the fair market value thereof, which shall be due at the death of the decedent. The tax is not upon the estate of the decedent but upon the right of succession, and it accrues at the same time the estate vests -- that is, upon the death of the decedent. Questions may arise as to the persons in whom the title vests, and such questions may affect the amount of the tax and the person whose estate shall be chargeable with it; but, when those questions are finally determined, their determination relates to the time of the decedent's death. No changes of title, transfers, or agreements of those who succeed to the estate, among themselves or with strangers, can affect the tax. All questions concerning it must be determined as of the date of the decedent's death.
>
> "It is insisted that the value of the residuary estate is diminished by the adverse claim of the contesting heir, and that the payment of $50,000 made in good faith upon reasonable grounds for the settlement of such claim should therefore be deducted in fixing the value of the estate. The statute requires all the property of the estate to be appraised at its fair market value. The value of the estate which passes is the value so ascertained less the indebtedness of the decedent and the expenses of administration. Whatever litigation may occur between those who succeed to the estate as to their respective rights, or between different claimants of interests, cannot affect such value. . . .
>
> "It is argued that the heir received the sum of $50,000 as the value of her interest in the estate by virtue of the fact that she was heir, and that it therefore passed by descent. In fact,

however, she received nothing as heir. She re-
ceived nothing from the estate. No beneficial
interest passed to her under any statute. The
money was paid to her by virtue of a contract
with the heirs. Henry Graves died testate. His
will disposed of all his estate. The whole of
the residuary estate vested, at the instant of
his death, in the residuary legatees. The in-
heritance tax was due and payable. The benefi-
cial interest in the property then passed to the
legatees and their succession gave rise to the
tax. . . ."

The same result has been reached by the courts
of several other states. See the cases of English's Estate
v. Crenshaw, 110 S. W. 210, by the Supreme Court of Tennes-
see; In Re Wells' Estate, 120 N. W. 713, by the Supreme
Court of Iowa; Cochran's Executor and Trustee v. Common-
wealth, 44 S. W. (2d) 603, Kentucky; MacKenzie v. Wright,
252 P. 521, by the Supreme Court of Arizona; In Re O'Neill's
Estate, 162 Atl. 425, by the Prerogative Court of New Jersey.

A minority of the states have adopted a view that
when the beneficiary under the will pays part of the es-
tate to other heirs as a compromise agreement the amount
he actually receives under the will is accordingly dimin-
ished and such amount as he actually receives is thereby sub-
ject to the tax. The Supreme Court of Pennsylvania in the
case of In Re Pepper's Estate, 28 Atl. 353, stated as follows:

". . . In this case, if the will was allow-
ed to stand, the entire estate is liable to the
tax; but the only son of testator, and to whom
no bequest was made, for the reasons stated in
the will, -- that he was already amply provided
for, filed a caveat to contest the validity of
the will. After some testimony had been taken,
an agreement of compromise was entered into be-
tween some of the legatees and the caveator,
whereby they authorized the executor to pay to
him a certain sum out of the bequests to them in
settlement of the controversy, and in considera-
tion thereof the caveator agreed to withdraw the
caveat, discontinue all proceedings, and that
the will should be admitted to probate, etc. The
question now arises whether the legatees are
liable, not only to the collateral tax upon the

Honorable George H. Sheppard, Page 6

balance of their legacies, but also to that upon the amount they agreed to pay the caveator in compromise and settlement. We have reached the conclusion that under the most favorable construction of the act, so far as respects the contention on behalf of the commonwealth, they are not so liable, and for the reason that the amount paid the caveator was never received by them as legatees, and under the act it is only so much of the estate which actually passes to them by virtue of the will that is liable to the tax. It will readily be seen, if the contest instituted by the caveator had been successful, he would be entitled, under the intestate law, to the entire estate, and freed from the tax. Put, instead of further litigation, he accepted a portion of the estate, relinquished his claim to the balance, and thus, of course, reduced the amount passing to the legatees; and in fact, to the extent of the amount he received, the will is a nullity; so that all the legatees take is the amount of their bequests, after deducting the sum paid the caveator, and this they concede is subject to the tax. This, we think, is the proper construction to be placed upon the act of assembly. . . ."

The Court of Appeals of Georgia in the case of Taylor v. State, 149 S. E. 321, held in accordance with the rule announced in the Pennsylvania case, supra, and stated further that the heir which contested the will in taking the property under the compromise agreement in reality was taking the same under the laws of descent and distribution because it was through his heirship that he was in a position to contest the will. The court concluded as follows:

". . . since the agreement of accord and satisfaction, whereby the respective rights of the legatee and the heir at law were adjusted, had the effect of rendering the will inoperative to the extent of the portion of the property received by the heir, and permitted it to pass in accordance with the laws of descents and distribution. . . ."

The same rule of law as applied by the Pennsylvania and Georgia courts was adopted by the Supreme Court of Colorado in the case of People v. Wright, 91 P. 33. However, since

Honorable George H. Sheppard, Page 7

that time the statutes of Colorado have been amended so that the Colorado tax is now similar to the Federal tax in that the same is more properly called an estate tax rather than an inheritance tax, and under the decisions of the courts of that state construing the new tax statute the rule is the same as applied by the majority of the courts discussed, supra.

The same rule of law discussed herein as the minority rule was adopted by the Supreme Court of Minnesota in the case of State v. Probate Court of Kandiyohi County, 172 N. W. 902. However, in that case two of the judges dissented and analyzed the cases discussed herein which constitute the majority view and expressed a preference for the result reached by those courts.

By way of summary a majority of the states who have discussed the problem have held that the beneficiary under the will gets full title to the property at the time of the death of the deceased and that at such time he becomes liable for the full inheritance tax. They also state that this rule is not affected by any compromise or agreement made in consideration of the forbearance of contesting the will. On the other hand a minority of the states have adopted the view that the property actually received by the devisee under the will even though the same is probated in full is diminished by a compromise agreement or settlement made in consideration of the forbearance of suit with other heirs of the deceased. They, therefore, hold that the inheritance tax attaches only to the property actually received by the devisee.

It is the opinion of this department that the rule announced herein as a majority rule is the better one and the one that will be followed by the courts of this State. Article 3314, of the Revised Civil Statutes, reads in part as follows:

"When a person dies, leaving a lawful will, all of his estate devised or bequeathed by such will shall vest immediately in the devisee or legatee; . . ."

The Supreme Court of this State cited the above quoted article in the case of Frame v. Whitaker, 36 S. W (2d) 149, and held that the devisees took title to land devised to them under the will of the deceased immediately

Honorable George H. Sheppard, Page 8

upon said deceased's death. The San Antonio Court of Civil
Appeals in the case of Cannaway v. Farreara, 74 S. W. (2d)
717 (reversed by the Supreme Court on other grounds), stated
as follows:

> ". . . That upon the death of the owner of
> property the legal title vests at once in his
> heirs, subject to the control of the administra-
> tor during his tenure; . . ."

The Texarkana Court of Civil Appeals in the case
of Smith v. Lancaster, 248 S. W. 472, writ of error refused
by the Supreme Court, stated as follows:

> ". . . And, moreover, it is the settled rule
> that an estate by devise takes effect immediately
> upon the death of the testator unless otherwise
> directed, and that the title of the devisee is
> not affected by the delay in probating the will."

We believe, therefore, that in the fact situation
submitted when the deceased died title to the property de-
vised was vested in the beneficiary under the will to which
property he fully succeeded when the will was probated. At
such time an inheritance tax became due against the full
value of the property which said beneficiary took under the
will. We do not believe this result is changed by any dis-
position whatsoever made by the devisee under the will
whether it be in compromise or settlement or otherwise. We
agree with the comment in 26 Ruling Case Law 232 as follows:

> "It has been held that when the legatees
> agree to pay to the heirs, who are in the non-
> taxable class, a portion of their legacies to
> avoid a contest, the amount so paid should be
> deducted in determining the tax upon the lega-
> tees; but this decision seems clearly unsound."
> (Emphasis ours)

In reaching this result we are also influenced
by the administrative construction which has been placed
on this problem of construing the Texas Inheritance Tax
Law by the Attorney General's Department and the Comptrol-
ler of Public Account's Department since 1928. Such con-
struction would be considered by the courts of this State.
See Foy v. Schneider, 110 Tex. 269, 221 S. W. 880; City
of Tyler v. Texas Employers Insurance Association, 288

C. W. 409. On February 3, 1928, Assistant Attorney General Paul G. Page., Jr., rendered an opinion to the Honorable S. H. Terrell, Comptroller of Public Accounts, on this question, and said opinion contained the following language:

> "It appears that the devisees, under the terms of the will, will make a settlement with certain alleged heirs and you request to be advised if the tax is to be assessed against and paid by the devisees under the terms of the will or by the distributees under the agreement reached with the heirs.

> "You are now advised that the law requires and it has also been held that the tax should be paid by the devisees. Under the terms of the will no arrangements of this nature can alter the payment of the tax."

You are advised, therefore, that in our opinion the entire estate inherited by the devisee under the will under the facts you present is subject to the payment of the Texas Inheritance Tax.

Yours very truly

ATTORNEY GENERAL OF TEXAS

BY    Billy Goldberg
          Assistant

RG:LW      APPROVED NOV 12, 1940

ATTORNEY GENERAL OF TEXAS

